UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DENNIS WASHINGTON,

                      Plaintiff,

v.                                                           3:21-CV-0564
                                                              (MAD/ML)
DIANE CICCONE; AMANDA J. INGARRA;
and JUDGE LANCE DITWIG,

                      Defendants.
_____

APPEARANCES:                                                 OF COUNSEL:

Dennis Washington
  Plaintiff, *Pro Se*
33 High View Acres
Parksville, New York 12768

MIROSLAV LOVRIC, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

**I.    INTRODUCTION**

      The Clerk has sent this *pro se* Complaint (Dkt. No. 1) together with an application to proceed *in forma pauperis* (Dkt. No. 2) filed by Dennis Washington ("Plaintiff") to the Court for review. For the reasons discussed below, I grant Plaintiff's *in forma pauperis* application (Dkt. No. 2) and recommend that Plaintiff's Complaint (Dkt. No. 1) be dismissed in its entirety, in part without prejudice and with leave to amend, and in part with prejudice and without leave to amend.

**II.   BACKGROUND**

      On May 14, 2021, Plaintiff commenced this action by filing a verified Complaint and a motion to proceed *in forma pauperis*. (Dkt. Nos. 1, 2.)

Construed as liberally[1] as possible, the Complaint alleges that Plaintiff's civil rights were violated by Diane Ciccone, Amanda J. Ingarra, and Judge Lance Ditwig (collectively, "Defendants"). (*See generally* Dkt. No. 1.)

Plaintiff's handwritten Complaint is difficult to decipher. (*Id.*) The Complaint does not state the grounds for the Court's jurisdiction or contain any numbered claims. However, Plaintiff does allege that at some point in June of 2019, Monticello Raceway Judge Lance Ditwig suspended his trainer's license for two years and fined him $2,000 based on a "fabricated story." (Dkt. No. 1 at 1.) Plaintiff further alleges that "Hearing Officer" Defendant Ciccone held a hearing on December 19, 2019 on "[t]he same accusations" and informed Plaintiff that he had defaulted on February 18, 2020. (*Id.*) Plaintiff alleges that Defendant Ciccone "made a decision to fine me 2,000 dollars and [give me a] 2 year suspension." (*Id.*) Plaintiff also complains that he was not notified of Defendant Ciccone's decision "until [M]ay 27, 2020 from [Defendant] [A]manda Ingarra, Rick [G]oodell['s] secretary" (*Id.*)

Plaintiff next alleges that he asked Defendant Ciccone to meet with him at Goodell's office and that he had "90 days between Feb[ruary] 18, 2020 and May 18, 2020 to bring more proof to clear [his] name[.]" (*Id.*) Plaintiff alleges that he did not receive 90 days to provide such proof because Defendant Ingarra emailed him Defendant Ciccone's decision on May 27, 2020, breaking "th[eir] own process and procedure[s][.]" (*Id.*) Plaintiff further alleges that the New York State Gaming Commission (the "Gaming Commission") ultimately revoked his trainer's license for 10 years and fined him $5,000 for "[the] same matter." (*Id.*)

---

[1] The Court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

The Complaint also includes what appears to be a single page from a complaint filed with the Equal Employment Opportunity Commission ("EEOC") that complains of discrimination and retaliation on the basis of Plaintiff's race, a letter from the EEOC dismissing that complaint and notifying Plaintiff of his right to sue, and a copy of a contract between the Gaming Commission and Defendant Ciccone "for Hearing Officer services." (*Id*. at 2-4, 7.)

In his Complaint, Plaintiff does not allege the reasons why the Gaming Commission revoked his license and fined him. Plaintiff also fails to allege any specific causes of action against any of the Defendants. Read expansively, however, the Complaint appears to allege that the Gaming Commission's decision to revoke his trainer's license and fine him was without due process of law, in violation of the Fourteenth Amendment. Plaintiff also appears to allege that the Gaming Commission's decision was discriminatory and a "Human Rights violation." (*Id*. at 1.)

The Complaint does not state what relief is being sought. (*See generally id*.) To the extent that Plaintiff is seeking monetary damages or other equitable relief, the Court has no basis to infer such relief from the Complaint. However, to the extent that Plaintiff seeks to overturn or reverse the Gaming Commission's decision to revoke his trainer's license and fine him, the Court proceeds with the following analysis. For a more complete statement of Plaintiff's allegations, refer to the Complaint. (*Id*.)

## III. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $402, must ordinarily be paid. 28 U.S.C. § 1914. A court is authorized, however, to permit a litigant to proceed *in forma pauperis* if a party "is unable to pay" the standard fee for

commencing an action. 28 U.S.C. § 1915(a)(1).[2] Having reviewed Plaintiff's application (Dkt. No. 2), the Court finds that Plaintiff meets the standard to proceed *in forma pauperis*. Plaintiff's application to proceed *in forma pauperis* is therefore granted.[3]

## IV. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to

---

[2] The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[3] Plaintiff is reminded that, although his application to proceed *in forma pauperis* has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering *sua sponte* dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston*

*v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory . . . or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## V. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed the Complaint with this principle in mind, I recommend that Plaintiff's Complaint be dismissed in its entirety.

### A. Claims Against Immune Defendants

Plaintiff's Complaint makes allegations against Defendant Ciccone, a hearing officer for the Gaming Commission, Defendant Judge Ditwig, a judge for the Monticello Raceway, and Defendant Ingarra, who appears to be a Gaming Commission employee. (Dkt. No. 1 at 1.) Plaintiff does not indicate whether he seeks to hold any of the Defendants liable in their individual or official capacities. (*See generally id*.)

As to Defendants Ciccone and Ditwig, it is well settled that "officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages." *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999); *see also Mireles v. Waco*, 502 U.S. 9, 10 (1991) (citation omitted) ("Although unfairness and injustice to a litigant may result on occasion, it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising authority

vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.").

Judicial immunity also extends to administrative officials performing functions closely associated with the judicial process, because the role of the "hearing examiner or administrative law judge . . . is 'functionally comparable' to that of a judge." *Butz v. Economou*, 438 U.S. 478, 513 (1978). "[O]fficials empowered with making judicial-like decisions regarding the issuance, renewal, and revocation of licenses . . . are entitled to absolute immunity for such acts." *D'Agostino v. New York State Liquor Auth.*, 913 F. Supp. 757, 768 (W.D.N.Y. 1996), *aff'd*, 104 F.3d 351 (2d Cir. 1996).[4]

While judicial immunity shields judges from suit to the extent they are sued in their individual capacities, the Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities. *Libertarian Party of Erie Cty. v. Cuomo*, 970 F.3d 106, 122-23 (2d Cir. 2020) (affirming dismissal of individual capacity claims against state administrative judges based on judicial immunity and official capacity claims based on the Eleventh Amendment); *Aron v. Becker*, 48 F. Supp. 3d 347, 363 n.8 (N.D.N.Y. Sept. 22, 2014) (McAvoy, J); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.").

---

4   Judicial immunity may not apply to actions taken outside a judicial capacity or when an action, judicial in nature, was "taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11-12 (1991) (citations omitted). Plaintiff does not allege any facts suggesting either scenario is applicable here. (*See generally* Dkt. No. 1.)

To the extent Plaintiff attempts to state claims against Defendants Ciccone and Ditwig in their individual capacities, those claims must be dismissed because they are barred by judicial immunity. To the extent that Plaintiff attempts to state claims against Defendants Ciccone and Ditwig in their official capacities, those claims must be dismissed as barred by the Eleventh Amendment.

As to Defendant Ingarra, Plaintiff similarly fails to specify whether he seeks to state claims against her in her individual or official capacity. In fact, the allegations against Defendant Ingarra appear to be limited to her role in communicating the hearing officer's decision to Plaintiff. (Dkt. No. 1.) In any event, because it appears that Defendant Ingarra is a Gaming Commission employee, to the extent that Plaintiff attempts to state claims against Defendant Ingarra in her official capacity, such claims must be dismissed as barred by the Eleventh Amendment. "'[C]laims against a government employee in his official capacity are treated as a claim against the municipality,' and, thus, cannot stand under the Eleventh Amendment." *Jackson v. Gunsalus*, 16-CV-0647, 2016 WL 4004612, at \*2 (N.D.N.Y. June 24, 2016) (Dancks, M.J.) (quoting *Hines v. City of Albany*, 542 F. Supp. 2d 218, 227 (N.D.N.Y. 2008) (McCurn, J.)), *report and recommendation adopted by* 2016 WL 3983635 (July 25, 2016) (Sharpe, J.); *see also Hafer v. Melo,* 502 U.S. 21, 25 (1991) (citing *Graham*, 473 U.S. at 166) ("Suits against state officials in their official capacity therefore should be treated as suits against the State.").

Plaintiff's claims against Defendants Ciccone and Ditwig, in their individual and official capacities, and claims against Defendant Ingarra, in her official capacity, must be dismissed as barred by doctrine of judicial immunity and the Eleventh Amendment. As a result, Plaintiff may only attempt to state claims against Defendant Ingarra in her individual capacity, and the remaining analysis of this Order and Report-Recommendation proceeds with that understanding.

8

### B. Fourteenth Amendment Due Process Claim

Although Plaintiff does not state the remedy he seeks, the Court infers from the Complaint that Plaintiff seeks to reverse the Gaming Commission's decision to revoke his trainer's license for 10 years and the $10,000 fine. (*See generally* Dkt. No. 1.) Plaintiff also appears to allege that the Gaming Commission's decision was made without affording him due process of law, in violation of the Fourteenth Amendment. (*Id.*)

A state-issued license may qualify as a property interest under the Fourteenth Amendment for due process purposes. *Bartolini v. Cassels*, 801 Fed. App'x 10, 13 (2d Cir. 2020); *see also Rothenberg v. Daus*, 08-CV-567, 2014 WL 3765724, at *6 (S.D.N.Y. July 31, 2014) (recognizing a Fourteenth Amendment property right in various types of licenses because "'once licenses are issued . . . their continued possession may become essential in the pursuit of a livelihood.'") (quoting *Bell v. Burson*, 402 U.S. 535, 539 (1971)). However, "a plaintiff may not plausibly claim the deprivation of a protected interest when there is an adequate post-deprivation remedy available under New York State law." *Storey v. Morris*, 16-CV-0206, 2017 WL 933212, at *3 (N.D.N.Y. Feb. 1, 2017) (Baxter, M.J.), *report and recommendation adopted by* 2017 WL 916418 (N.D.N.Y. Mar. 8, 2017) (Kahn, J.) (citation omitted). Under New York law, a Gaming Commission's decision to revoke or suspend a license "shall be reviewable in the Supreme Court in the manner provided by and subject to the provisions of article 78 of the Civil Practice Law and Rules." 9 N.Y.C.R.R. § 4002.10. Indeed, "an Article 78 proceeding[] provide[s] an adequate remedy for those who seek to challenge any action or inaction by an administrative agency or officers of state or local government." *Hourihan v. Lafferty*, 58 F. Supp. 2d 10, 15 (N.D.N.Y. 1999) (Hurd, M.J.) (citing N.Y.C.P.L.R. § 7801). Although it is not clear to the Court what relief Plaintiff seeks in this case, even if monetary relief was sought "[i]t is well-settled that 'an Article

78 proceeding is adequate for due process purposes even though the petitioner may not be able to recover the same relief that he could in a § 1983 suit.'" *Attallah v. New York Coll. of Osteopathic Med.*, 94 F. Supp. 3d 448, 455 (E.D.N.Y. 2015) (quoting *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996)), *aff'd*, 643 F. App'x 7 (2d Cir. 2016). To be sure, individuals alleging that a state-issued license was revoked or suspended without due process have been routinely dismissed from federal court because Article 78 may serve as a meaningful post-deprivation remedy. *See Bartolini*, 801 Fed. App'x at 13 (citing cases); *Harris*, 572 F.3d at 75-76 (rejecting due process challenge to revocation of medical license because "Article 78 [was an adequate] post-deprivation remedy"); *Gudema v. Nassau County*, 163 F.3d 717, 724-25 (2d Cir. 1998) (rejecting due process challenge to suspension of driver's license because Article 78 provided a meaningful post-deprivation remedy).

Plaintiff alleges that the Gaming Commission's decision to revoke his license and fine him was made without due process (Dkt. No. 1 at 1), but he fails to allege that an Article 78 proceeding would not provide a sufficient remedy. Indeed, to the extent that Plaintiff seeks to reverse the Gaming Commission's decision, Plaintiff must seek such relief under Article 78. Although Plaintiff does not name the Gaming Commissions as a defendant in this case, to the extent that Plaintiff intends to state a Fourteenth Amendment due process claim against the Gaming Commission, it would be dismissed for the same reasons. Accordingly, Plaintiff's claim that he was denied due process in violation of the Fourteenth Amendment by the Gaming Commission's decision to revoke his license and fine him should be dismissed.

### C. Title VII Claim

The Complaint includes one page of what appears to be a complaint filed with the EEOC and a letter from the EEOC dismissing the same. (Dkt. No. 1 at 2-3.) The EEOC complaint

indicates that Plaintiff alleged that the Gaming Commission's decision to revoke his license and fine him was based on his race and was retaliatory. (*Id*. at 2.) The EEOC letter, dated February 11, 2021, dismisses Plaintiff's EEOC complaint but indicates that he "may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court . . . **WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost." (*Id*. at 3.) (Emphasis in original.) Plaintiff commenced this action on May 14, 2021. (*See generally*, Dkt. No. 1.)

The Complaint does not allege any cause of action under Title VII or otherwise reference any federal law that prohibits the discrimination complained of, but Plaintiff does allege that the Gaming Commission's decision was "completely a EEOC violation[.]" (*Id*. at 1.) To the extent Plaintiff seeks to state a claim for a violation of Title VII by incorporating the allegations from part of his complaint to the EEOC, however, he fails to state a claim for the following reasons.

Title VII provides that "[i]t shall be unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). More specifically, a plaintiff asserting a Title VII retaliation claim must allege facts showing that: (1) he participated in a protected activity; (2) that he suffered an adverse employment action; and (3) that there was a causal connection between engaging in the protected activity and the adverse employment action. *Rasym v. Marriott Int'l, Inc.*, 952 F.3d 379, 391 (2d Cir. 2020) (citation omitted).

Plaintiff does not allege that he was employed by any of the Defendants, let alone that he participated in protected activity and that there was any causal connection between that activity

his license suspension or the fine. For these reasons,[5] Plaintiff's Title VII claim must be dismissed. *See Jones v. Thomas*, 20-CV-5581, 2020 WL 5077026, at *4 (S.D.N.Y. Aug. 27, 2020) (dismissing Title VII claim where plaintiff failed to allege that he was an employee of any of the defendants); *Basora-Jacobs v. Palevsky*, 20-CV-1675, 2020 WL 3868710, at *2 (E.D.N.Y. July 9, 2020) (same).

### D.     Human Rights Law Claim

Plaintiff alleges that the Gaming Commission's decision to revoke Plaintiff's training license and fine him was "completely a . . . human rights violation." But to the extent that Plaintiff seeks to state a claim under the New York State Human Rights Law, § 296 *et seq.*, I recommend that the Court decline to exercise supplemental jurisdiction over that claim because I have recommended that all of the federal claims be dismissed. *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[A] district court may decline to exercise supplemental jurisdiction if it has 'dismissed all claims over which it has original jurisdiction.'") (quoting 28 U.S.C. § 1367(c)(3)).

### E.     Compliance with Fed. R. Civ. P. 8

The only allegations against Defendant Ingarra appear to be that she communicated the hearing officer's decision to Plaintiff. (Dkt. No. 1 at 1.) Plaintiff states no other allegations that implicate her involvement in the Gaming Commission's decision or any of his claims. (*See generally id.*) Accordingly, the allegations against Defendant Ingarra fail to state any plausible

---

[5]     It is unclear from the face of the Complaint when Plaintiff received the right to sue letter from the EEOC. The letter is dated February 11, 2021 and this matter was filed on May 14, 2021. (*Compare* Dkt. No. 1 at 3 *with* Dkt. No. 1 at 1.) While more factual development may be necessary to conclude whether the Complaint was timely filed, "[a]bsent sufficient evidence to the contrary, it is presumed that a plaintiff received his or her right to sue letter three days after its mailing." *Johnson v. St. Barnabas Nursing Home*, 368 Fed. App'x 246, 248 (2d Cir. 2010) (citation omitted).

claim for relief, *Iqbal*, 556 U.S. at 678 (allegations must state a claim to relief that is plausible on its face), and Defendant Ingarra should be dismissed.

In addition, the analysis in the preceding sections of this Order and Report-Recommendation is based on the liberally drawn inference that Plaintiff seeks to reverse or otherwise vacate the Gaming Commission's decision to revoke his trainer's license and fine him. However, because the Complaint does not specify the relief sought, the Court has an additional reason to dismiss the Complaint in its entirety.

Fed. R. Civ. P. 8(a)(3) provides that a complaint must contain a "demand for the relief sought, which may include relief in the alternative or different types of relief." When a plaintiff fails to expressly state the relief sought in an action, the complaint fails to comply with Rule 8 "and is subject to dismissal on that basis alone." *Bitetto v. D'Agostino*, 18-CV-00966, 2018 WL 6003973, at *2 (N.D.N.Y. Oct. 16, 2018) (Dancks, M.J.), *report and recommendation adopted*, 2018 WL 6000971 (N.D.N.Y. Nov. 15, 2018) (Sharpe, J.). "When a complaint fails to satisfy the Rule 8 pleading standard, a district court may dismiss the complaint on motion or *sua sponte*." *Rodriguez v. Nassau Cty. Police Dep't*, No. 18-CV-0203, 2018 WL 2725421, at *2 (E.D.N.Y. June 6, 2018); *see also France v. Nassau Cty. Jail*, 14-CV-2547, 2014 WL 1871937, *5 (E.D.N.Y. May 6, 2014) (dismissing *pro se* complaint that, inter alia, did not seek any relief).

Here, the Complaint fails to state the relief sought, running afoul of Fed. R. Civ. P. 8(a)(3) and providing the Court with an additional basis to dismiss the Complaint in its entirety.

## VI. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05

(2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[6]

    I recommend that all claims against Defendants Ditwig and Ciccone be dismissed with prejudice and without leave to amend because they are immune from suit. *See Gonzalez v. Sharpe*, 06-CV-1023, 2006 WL 2591065, at *3 (N.D.N.Y. Sept. 8, 2006) (Scullin, J.) (dismissing without leave to amend claims that were barred based on doctrine of judicial immunity). Similarly, I recommend all claims against Defendant Ingarra, in her official capacity, be dismissed with prejudice and without leave to amend. *See Jackson*, 2016 WL 4004612, at *2 (dismissing with prejudice and without leave to amend claims that were barred by Eleventh Amendment).

---

[6]     *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

Although I have serious doubts about whether Plaintiff can amend to assert actional claims against Defendant Ingarra, in her individual capacity, I am unable to conclude with complete certainty that if permitted leave to amend the Complaint, Plaintiff could not assert actionable claims under the Fourteenth Amendment, Title VII, or the New York State Human Rights Law.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 23, 1995) (Pooler, J.). In any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. The revised pleading must also allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

ACCORDINGLY, it is

ORDERED that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is GRANTED; and it is further respectfully

RECOMMENDED that the Court **DISMISS WITH PREJUDICE AND WITHOUT LEAVE TO REPLEAD** Plaintiff's claims against Defendants Ciccone and Ditwig, in their individual and official capacities, and claims against Defendant Ingarra, in her official capacity; and it is further respectfully

RECOMMENDED that the Court **DISMISS WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD** Plaintiff's Fourteenth Amendment, Title VII, and New York State Human Rights Law claims against Defendant Ingarra, in her individual capacity; and it is further

ORDERED that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[7] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013);

---

[7] If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: July 13, 2021
       Binghamton, New York

_____
Miroslav Lovric
U.S. Magistrate Judge